**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                                        No. CR 03-2274 JB

JOHN GOULD,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Defendant John Gould's Sentencing Memorandum, filed May 5, 2009 (Doc. 432).  The Court held a sentencing hearing on May 6, 2009. The primary issues are: (i) whether the Court should sustain various objections to the Presentence Investigation Report ("PSR"); (ii) whether Gould should receive a role adjustment for being a minimal participant; and (iii) whether a variance from the advisory guideline sentence is proper.  For the reasons stated on the record and for other reasons consistent with those already stated, the Court will grant the relief Gould seeks in his Sentencing Memorandum in part and deny it in part.  The Court will also grant a variance from applicable guidelines sentencing range.

**PROCEDURAL BACKGROUND**

On April 2, 2007, a jury convicted Gould on four counts of the superceding indictment that had been returned against him: (i) Deprivation of Rights Under Color of Law, in violation of 18 U.S.C. § 242; (ii) Witness Tampering, in violation of  18 U.S.C. § 1512(b)(3); (iii) a second count of Deprivation of Rights Under Color of Law, in violation of 18 U.S.C. § 242; and (iv) a second count of Witness Tampering, in violation of  18 U.S.C. § 1512(b)(3).  A United States Probation Officer subsequently prepared a PSR, the final version of which calculates Gould's total offense level

as 37 and his criminal history category as I.  See PSR ¶¶ 72 & 75, at 19.

Before the sentencing hearing, Gould submitted his Sentencing Memorandum.  In the Sentencing Memorandum, Gould makes numerous objections to the PSR and to the ultimate offense level calculation that the PSR gives.  Gould also asks the Court, through his Sentencing Memorandum, to grant him a role adjustment for being a minimal or minor participant.  See Sentencing Memorandum ¶¶ 20-24, at 9-10.  Gould also requests that the Court impose a sentence that is lower than the applicable guidelines imprisonment range.  See id. at 16.

On May 6, 2009, the Court held a sentencing hearing.  At the hearing, the Court allowed Gould and the United States to present arguments regarding the various issues that Gould raised in his sentencing memorandum.  At the hearing, Gould also reiterated his arguments in favor of a downward variance.

## LAW REGARDING SENTENCING

Since the Supreme Court of the United States decided United States v. Booker, 543 U.S. 220 (2005), a sentencing court's task is to impose a sentence that implements the sentencing factors set forth in 18 U.S.C. § 3553(a).  Those factors are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed –

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for –

    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –

        (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

        (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

    (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

(5) any pertinent policy statement –

    (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

    (B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).  The Court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)" of § 3553(a).  18 U.S.C. § 3553(a).

## ANALYSIS

Gould's Sentencing Memorandum sets forth various objections and requests, but the requests can ultimately be divided into three categories: (i) objections to various parts of the PSR; (ii) a request for a role adjustment; and (iii) arguments in favor of a variance from the advisory guidelines sentence.  The Court will sustain several of Gould's objections, but will overrule others.  The Court will also deny an adjustment for minor or minimal participant.  Finally, the Court will grant a variance from the applicable guideline imprisonment range.

**I.      THE COURT WILL SUSTAIN SOME OF GOULD'S OBJECTIONS TO THE PSR'S CALCULATIONS AND WILL RECALCULATE HIS OFFENSE LEVEL ACCORDINGLY.**

After carefully considering Gould's arguments, the Court finds that some, but not all, of his objections to the PSR have merit.  For reasons stated at the hearing, and for other reasons set forth in this Memorandum Opinion and Order, the Court will sustain certain objections.  In light of the objections that the Court has sustained, the combined adjusted offense level of 37 that is reflected in the PSR will become 33.

**A.      GOULD IS ENTITLED TO HAVE CERTAIN MATERIAL INCLUDED IN THE PSR THAT REFLECTS HIS NARRATIVE OF EVENTS.**

Gould asserts that the PSR fails to reflect certain aspects of his side of the story.  He also argues that the PSR miscalculates the number of days he was in custody as of May 6, 2009.  Regarding the information he wants added, Gould asserts that the PSR should mention that Gould was the one who officially reported his subordinate co-defendants for their apparent misconduct.  See Sentencing Memorandum at 1.  He argues that the PSR inaccurately states that Gould was among the first to arrive in Day Room 4 on the date of one of the incidents and that the PSR fails to mention that Gould was present outside the cell for nearly thirty minutes hoping to avoid the dangerous cell

invasion by a tactical team.  See Sentencing Memorandum at 2.  Finally, Gould notes that, while the PSR contains his version of the Tampico Verdin assault, it does not contain Gould's version of events regarding the incident with James Barber.

The Court finds that Gould's calculation of 765 for his time in custody is correct.  The Court also believes that it is appropriate to add much of the information that Gould has requested in these paragraphs of the PSR.  The Court therefore finds that the PSR should be updated to include Gould's version of events to paragraphs 37 through 38 of the PSR.  The Court will not order, however, that this material be added to the victim impact statement.  The Court will also order that paragraph 21 of the PSR be adjusted to reflect that Gould was responding after the officer-down call and was not one of the initial responders.  Paragraph 30 of the PSR will also reflect that Gould waited for nearly thirty minutes before entering the cell.  The Court will require that paragraph 35 of the PSR include the expanded version of events that Gould requests in his Sentencing Memorandum.  Finally, the Court will require that paragraph 97 of the PSR reflect that Gould worked for the Department of Commerce, in addition to the other information that the paragraph already contains.

### B.    GOULD IS NOT ENTITLED TO ANY REDUCTIONS IN HIS OFFENSE LEVEL FOR ACCEPTANCE OF RESPONSIBILITY.

The Sentencing Guidelines allow for a 2-level reduction in offense level "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense."  U.S.S.G. § 3E1.1(a).  The Sentencing Commission also notes in the commentary to U.S.S.G. § 3E1.1:

> This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse.  Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction.  In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial.  This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (e.g., to make a constitutional

challenge to a statute or a challenge to the applicability of a statute to his conduct). In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct.

U.S.S.G. § 3E1.1(a), cmt. 2.

The PSR states in paragraphs 48 and 71 that Gould put the United States to its proof, and asserts therefore that he is not entitled to the 2-level adjustment for acceptance of responsibility. The PSR is correct in this regard. Gould's situation does not present the rare case in which an individual may clearly demonstrate an acceptance of responsibility even though he or she chose to proceed to trial. The Court agrees that a defendant should not be precluded from receiving the adjustment for acceptance of responsibility merely because he went to trial. The Court notes, however, that, while Gould may not have denied the sequence of events, there were still factual disputes at trial about, for example, firing the gun and the purpose for firing the gun. Moreover, Gould was trying to negate the intent elements and to create a different impression at trial than the elements of the crimes charged require. In other words, Gould was not accepting responsibility and was not relying primarily on legal arguments such that he should receive the adjustment for acceptance of responsibility.

The record of Gould's pretrial statements does not reflect that he was ready to accept responsibility for his conduct, or that he went to trial to preserve issues not related to factual guilt. Indeed, he pled guilty and then filed a motion to withdraw his guilty plea, suggesting that he made a very deliberate decision to contradict the factual elements of each crime charged. After he withdrew his plea, and at trial, Gould contested his guilt factually and legally. Accordingly, the Court will overrule Gould's objections to paragraphs 48 and 71, and will decline to apply an adjustment for acceptance of responsibility.

**C.    THE COURT WILL SUSTAIN GOULD'S OBJECTION TO THE APPLICATION OF THE VULNERABLE-VICTIMS ENHANCEMENT.**

The Sentencing Guidelines provide for a 2-level enhancement "[i]f the defendant knew or should have known that a victim of the offense was a vulnerable victim." U.S.S.G. § 3A1.1(b)(1). Gould's PSR provides two separate 2-level vulnerable victim-enhancements for the two victims. The Court agrees with Gould that the enhancements are improperly applied. While a victim's custodial status increases vulnerability to assaults such as the ones that occurred in this case, the Court is concerned about resting an application of the vulnerable-victim enhancement solely, or primarily, on custodial status. The comments to U.S.S.G. § 3A1.1 state that a vulnerable victim is someone "who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." U.S.S.G. § 3A1.1, cmt. 2. Some of the examples the comments give include where a defendant markets an ineffective cure for cancer or chooses a handicapped person to target for a robbery. See id.

Gould's victims do not fit comfortably into these categories. Focusing on the victims' personal and individual vulnerability, the Court does not believe either was a vulnerable victim as contemplated in U.S.S.G. § 3A1.1. In this case, the United States has asserted that one of the victims had a particular mental vulnerability. There is inadequate evidence, however, that Gould did what he did because of the victim's mental vulnerability. Ultimately, the United States has not offered sufficient evidence that there was anything besides custodial status that would make the victims unusually vulnerable. The enhancement from U.S.S.G. § 3A1.1 therefore does not apply in this case.

**D.    THE COURT WILL OVERRULE GOULD'S OBJECTIONS TO THE APPLICATION OF THE ENHANCEMENTS FOR RESTRAINING THE VICTIMS.**

Gould's PSR applied two separate enhancements for restraint of the victim. The Sentencing

Guidelines provide for a 2-level enhancement "[i]f a victim was physically restrained in the course of the offense. . . ." U.S.S.G. § 3A1.3. In this case, the United States has established by a preponderance of the evidence that the victims were physically restrained at the time of the offense. Regarding the incident mentioned in paragraph 52, Gould argues that the PSR applies the enhancement based on the disputed allegation that Gould slammed the victim's head into a concrete floor. Even if Gould is correct in stating that he never slammed the victim's head into the floor, the enhancement applies because the United States has shown by a preponderance of the evidence that the victim was restrained – that detention officials were holding the victim down on the ground and controlling his limbs. The restraint, and not the head slamming, is what gives rise to the enhancement.

The enhancement in paragraph 61 was also properly applied. The Court will therefore apply the enhancement, and overrule Gould's objections to paragraphs 53 and 61 of the PSR.

**E.      THE ENHANCEMENTS FOR OBSTRUCTION OF JUSTICE ARE PROPERLY APPLIED IN THIS CASE.**

In paragraphs 55 and 63, the PSR includes enhancements for obstruction of justice. According to the PSR, Gould gave a false version of some of the events and filed false reports regarding one of the incidents. U.S.S.G. § 3C.1.1 provides for a two-level enhancement where the

> defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and . . . the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense . . . ."

U.S.S.G. § 3C.1.1. Regarding the false version of events discussed in paragraph 55 of the PSR, various statements Gould made were inconsistent with the evidence in the case. For example, Gould's narrative about the timing of events relating to when he arrived at Verdin's cell does not

conform to the evidence that, by the time Gould arrived, Verdin has already been subdued.  It therefore appears that Gould made multiple false, material statements regarding the event.  Moreover, the Court sees evidence of obstruction in Gould's statements that, during one of the incidents, he only emptied the gun into the cell, where the evidence shows that Gould turned the gun on the victim. Given the evidence, the enhancements for obstruction of justice noted in paragraphs 55 and 63 of the PSR were properly applied.

### F.    THE COURT WILL SUSTAIN GOULD'S OBJECTIONS TO PARAGRAPH 58 OF THE PSR IN PART AND OVERRULE THEM IN PART.

Gould raises two objections to paragraph 58 of the PSR.  First, he notes that the PSR increases his offense level five points pursuant to U.S.S.G. §2A2.2(b)(B) for use of a dangerous weapon with intent to commit bodily injury.  Gould objects to this enhancement on the grounds that Gould did not intend to injure Barber, but rather to force Barber to lie down so that an extraction team could safely enter the cell.  See Sentencing Memorandum at 6.  Second, Gould objects to the additional 4-level enhancement reflected in paragraph 58 for serious bodily injury.  Gould argues that this enhancement should be only 2 levels because the infections that Barber sustained resulted from decisions by the treating physician, and possibly from Barber's own refusal to receive medical treatment.  See Sentencing Memorandum at 6.

At the sentencing hearing, it was noted that, at the time of the offense, U.S.S.G. §2A2.2 applied an offense level of 15, with a 2-level enhancement for bodily injury and a 4-level enhancement for serious bodily injury.  U.S.S.G. §2A2.2 was subsequently amended so that, now, the offense level is 14, with a 3-level enhancement for bodily injury and a 5-level enhancement for serious bodily injury.  The Court clarified at the hearing that it would apply the Sentencing Guidelines provisions applicable at the time of the offense to calculate the offense level.

On the record before it, the Court believes the 2-level enhancement for bodily injury is appropriate, but not the 4-level enhancement for serious bodily injury.  Under the Sentencing Guidelines, bodily injury means "any significant injury, e.g., an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought." U.S.S.G. § 1B1.1, cmt. 1(B). Serious bodily injury, however, means "injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." U.S.S.G. § 1.1B1, cmt. 1(L). The United States has established that the injury Gould inflicted constituted bodily injury, but not serious bodily injury.  It is possible that the victim later suffered serious bodily injury because of the denial of medical treatment.  The denial of medical treatment, however, was not a result of Gould's conduct.  The Court will therefore apply the enhancement for bodily injury, but not for serious bodily injury.

## II.     THE COURT WILL NOT GRANT GOULD A ROLE ADJUSTMENT FOR BEING A MINIMAL OR MINOR PARTICIPANT.

Gould contends that he should receive an adjustment to his offense level for a mitigating rule. U.S.S.G. §3B1.2 provides a 4-level adjustment if the defendant was a minimal participant, a 2-level adjustment if a defendant was a minor participant, and 3-level adjustment for cases lying between minimal and minor participant.  The Court does not, however, believe a role adjustment is warranted in this case.  Mitigating role adjustments are appropriate where the defendant's role makes him substantially less culpable than the average participant.

Gould joined and actively participated in the activity.  Moreover, while Gould was not directing others in such a way that would justify an upward adjustment, the Court must consider Gould's position as a supervisor.  Gould's participation and his status in the organization indicate that

he was not substantially less culpable than the average participant.  A minimal or minor role adjustment – or something in between – would therefore be inappropriate.

## III.   THE COURT BELIEVES A VARIANCE FROM THE GUIDELINES IS APPROPRIATE IN THIS CASE.

Given that the Court has sustained some of Gould's objections to the calculation of his offense level in the PSR, Gould's total offense level is 33 and his criminal history category is I.  The imprisonment range under the Sentencing Guidelines is 135 to 168 months.  Pursuant to U.S.S.G. § 5G1.1, however, the guideline imprisonment sentence is 120 months.

The Court must impose a sentence that accurately reflects each of the factors set forth in 18 U.S.C. § 3553(a).  In reaching an appropriate sentence, the Court cannot – unlike an appellate court – consider a sentence falling within the guidelines range as a presumptively reasonable sentence.  See Gall v. United States, 128 S.Ct. 586, 597 (2007).  Those factors that the Court must consider are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed –
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for –
>
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –

-11-

(i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

(B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

(5) any pertinent policy statement –

(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). After considering the arguments and the record before it, and having thought extensively about an appropriate sentence, the Court does not believe the punishment set forth in the Guidelines is appropriate for the conduct for which Gould was convicted.  The Court therefore believes some downward variance is appropriate.

In imposing a sentence, the Court has taken into consideration Gould's profession, which was a dangerous one, and which required him to maintain order and keep a facility safe while working

-12-

with many dangerous and psychotic individuals.  The penal system is relatively dangerous, both to inmates and to prison officials.  Reviewing incidents involving other inmates, it is apparent that, while Gould made a mistake in the two cases for which he was convicted, he was largely dedicated to upholding the law.  The Court believes the sentence should therefore reflect the good Gould has done in his life, and should take into account that he is not a danger to society at large, though he may have qualities that make him a danger to those in the corrections system.  By removing him from a position in the corrections system, that danger is eliminated.  Because he has been removed from the circumstances in which he poses a danger, the need for the sentence to reflect adequate deterrence specific to Gould is reduced.

Furthermore, the actions that Gould took should be viewed in their proper context.  The incidents did not occur in calm situations.  Corrections officers are responsible for the health and safety of many people.  As they respond to difficult situations involving potentially dangerous inmates, the officers must strike a delicate balance.  The sentence should reflect this context, in which the conduct occurred.

At the same time, while the Court sees the need to temper the Sentencing Guidelines to some extent, the Court does not believe a large variance is appropriate.  The crimes were cruel and excessive, and resulted in violations of inmates' and prisoners' civil-rights.  Congress has instructed that these crimes should be taken seriously in the civil rights context.  A large variance would cut against Congress' determination regarding the seriousness of these crimes.

Given those considerations, the Court believes a sentence of 97 months is appropriate.  Such a sentence reflects the seriousness of the offense.  Such a sentence also affords specific deterrence to Gould, and is serious enough to provide general deterrence to others who might be tempted to commit similar crimes.  The sentence adequately protects the public, especially given that Gould is

-13-

largely a danger only to inmates and prisoners, and he is unlikely to be placed in a similar position again. A 97-month sentence also promotes respect for the law.

At the same time, the sentence is sufficient, without being excessive, in achieving these objectives. The 120-month sentence that the Sentencing Guidelines provide would be, in the Court's view, excessive. Thus, the Court believes the 97-month sentence properly reflects the considerations set forth in 18 U.S.C. § 3553(a).

In sum, the Court imposes a sentence of 97 months incarceration for each of counts 1, 2, 3, and 4 of the superceding indictment. Each count will run concurrently. In addition, the Court will impose a $100.00 special assessment on each count, for a total of $400.00. Gould will also be placed on two years of supervised release for each count.

**IT IS ORDERED** that the relief sought in the Sentencing Memorandum is granted in part and denied in part.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Gregg J. Fouratt
    United States Attorney
Paul Spiers
    Assistant United States Attorney
Albuquerque, New Mexico

-- and –

Mark Blumberg
Kristy L. Parker
J. Evans Rice, III
    Trial Attorneys
United States Department of Justice
Civil Rights Division, Criminal Section
Washington, D.C.

    *Attorneys for the Plaintiff*

-14-

Stephen Aarons
Santa Fe, New Mexico

*Attorney for the Defendant*